We'll move to the second and sadly final case of the day, which is Goga Djadju, and please tell me if I haven't pronounced that correctly when you get to the podium, versus, we're just going to call it the government, 20-13073. And we have one advocate appearing remotely. All right, Mr. Militello, have I got that right? Yes, Your Honor. Beautiful. And will you pronounce your client's name for me? Yes. His name is Goga Djadju. Djadju, good. Okay, very well. So, you have reserved five minutes for rebuttal. You can fire away when ready. Thank you, Your Honor. May it please the court, Ross Militello on behalf of Mr. Goga Djadju. Nothing has changed in the material facts of this case that relate to the legal issues before this court. The motion to reopen is still pending before the board. The stay of removal from the board is still in place. ICE's authority over Mr. Djadju remains under Section 1231. Under Section 1231, there is no statutory right to independent review of the custody. The issue, the district court has already ruled on those facts, finding no jurisdiction over habeas because of finding that the stay of removal stops the tolling of the removal period time. And that is the issue squarely before this court. Before we get to what I'll call the substance of it, can you talk to us about mootness? It seems like there is a looming mootness issue in the case. Yes, Your Honor. That's where I was kind of alluding to is I don't think the issue is moot at all because the facts that underlie the district court's legal determination that got us here are still unchanged. That he has been released from custody doesn't change the permutation of the statutes and the laws and how they affect him as a district court applied. But isn't a habeas petition designed by the plain text of the statute to secure someone's release? Yes. It's also, I think it's more to contest the terms of custody than purely just release. I think this court has found that when an individual is not in physical custody, even if he provides release, that habeas could still provide a remedy. But are you challenging the conditions of custody? What relief did you seek? We're challenging the constitutionality of unreviewable, of ICE's unreviewable authority to impose whatever custody terminations at once on Mr. Jaju without him having any redress. And with the state of the district court's order, he never will have any redress as long as the administrative stay is in effect. If you dismiss this and require us to file another habeas contesting his current terms and the possibility that he could be re-detained specifically, the same exact legal issue will under 1231, the retention authority is still under 1231. He still has the administrative stay that he sought and the district court already found as a matter of law that that frustrates his removal ostensibly under 1231A1C. I guess the reason I'm asking is because if you're making what I'll call a Zadvitas claim, then Zadvitas is about indefinite detention, right? And so if your claim is a Zadvitas claim, then what you want is out and he's out. Yes, Your Honor, but I believe Zadvitas wasn't just about, in that case, the facts were that he was simply detained. But if they had opposed some other kind of onerous construction on his liberty, the district court there, in that case before it got all the way up, would have had to make those determinations of whether those constrictions were something that would give rise to habeas jurisdiction because they were so onerous in trying to balance how long they would be, the reason why they would be there. In Zadvitas, he was detained indefinitely because he could not be removed. And the same situation is here. The respondents still have the ability to re-detain him. They still have the legal authority to do so, even without anything changing. Their order of supervisions are in their discretion. Their release was completely discretionary. And if they do re-detain him, the same exact legal issue that is here before this court comes up again, which is still there. If we wanted to challenge the order of supervision as being too onerous and being violative of the Constitution, the same way the detention was in Zadvitas, we would still run into the issue of, is the removal period even polling? Are you at fault for the government not being able to remove you just because you have an administrative stay from the board? So I guess my question is, you said there, and I'm not trying to put words in your mouth, but you said, like, if we wanted to challenge the terms of supervision as being too onerous. Yes. But at least I don't understand that to have been the challenge you made. You brought a habeas petition that said, like, he wants to be released. The habeas statute says, you know, sort of, this is a remedy designed for people who are in custody. We, you know, we've said, and the Supreme Court has said, that release is the typical remedy. And so now that he's been released, I mean, like, what relief can we give him that he hasn't already been given? Well, the terms of his custody, the terms of his orders of provision aren't before this court, not in the factual record. That factual record was never developed. I can inform the court of what's in the orders of provision, but it seems not the issue, the legal issue here. The legal issue here is, does a district court have any jurisdiction to review the terms of custody at all if you sought administrative stay? And the custody authority is under 1231. That still remains the legal determination. Whether the facts that would influence the district court's determination once it did take jurisdiction have changed, that's still not before this court. The facts of his custody aren't even before this court because the district court never reached them. He never applied the SOPA standards. He never got that far because he found that the administrative state precluded any review, even from him, of ICE's authority to impose whatever custody restrictions it wants on somebody who has a final order of removal. So what's the difference, just from like the top level mootness determination before? I mean, some of the arguments that you've been making sound to me like voluntary cessation arguments, and I understand that that's an issue in the case. But from the top level mootness issue, what's the difference between your client and someone who has been removed? Clearly, when someone is challenging indefinite detention or something and that person is removed, then that case is moot, right? Well, it depends, Your Honor. It's moot for a habeas, but I mean... Yeah, I mean, which is what we have here, right? Right, yes, but he legally cannot be removed as long as the Board of Immigration Appeals has the administrative stay. It's their removal order. They stated there is no possibility he can be removed. The department has never contested this day. They've never filed in two years and change. Now, they've never filed anything with the board to quash the stay or vacate it or modify it or do anything. So the idea that there's some governmental interest here in his... in being able to have plenary authority to do whatever they want to Mr. Jaji's body, including re-detain him at their discretion, is still very much before this court. I don't see how just releasing him changes the legal rights between the parties. There's still the exact same legal dispute, and the facts material to that dispute are unchanged. Mr. Militello, let me ask you two questions, if I can. Of course, Your Honor. First, when was he actually released? For how long has he been released? He was released shortly before I filed the reply brief. I don't have the exact date of that, but it was in the middle of the briefing. By my count, I could be wrong. He's been released for 14 or 15 months already. Does that sound about right to you? Yes, Your Honor. After being detained for over a year after having... I understand how long he was detained. My question goes to how long he has been released. He has been on orders of revision since he's been released, which has been over a year itself. When a habeas petition appears to have been mooted by the petitioner's release, there's a relevant exception to the moodness that might otherwise apply, and it would turn on the question of voluntary secession. So when a government entity voluntarily ceases the challenged action here, and here they've released him, there is a presumption that the government will not later resume the action. So the plaintiff must show, if I have the law right, that there is a reasonable expectation the government will reverse course. One, do I have the law right? And two, is there any indication that your client's going to be re-detained? Did the government give you any reason to think they're going to lock him up again? And finally, if the answer is yes, I'm not sure I understand why you couldn't come back in and perfect your habeas at that point of showing in great clarity the proper application of the voluntary secession doctrine. I've really asked you three questions in one. Yes, your honor. I think I got them all. If you don't mind, I'll start with the last one, if you don't mind, about why it matters at the end of the day. The third question, your honor, was why it all matters. Maybe I should start from the beginning here. I do believe you're correct on the law. I do believe that there's about the voluntary cessation, especially in this circuit's precedent, the government is presumed to not, is not going to re-offend. But here the government isn't even admitting that they did anything wrong. In fact, they're staunchly saying they didn't do anything wrong. They're protecting their authority under the current state of this court's precedent to be able to hold people post-removal without any review. This court in FARA recently corrected its jurisprudence when it found that when you seek a stay from this court for a PFR, that takes you out of 1231 detention and puts you in a 1226 detention, providing these bond rights, this independent review of custody if it becomes prolonged and so on. Here the government is trying to have it so that they will re-offend. They will keep doing this. There is no indication from them. I think Troiano is the case that says there's a presumption, but then it also requires a clear expression that they are going to recede from that position. And they've not given any indication of that. In fact, the order of supervision itself makes it clear that in their discretion, he can be re-detained. He has no enforceable rights under the order of supervision. He has to obey it. The government can withhold it. They can withdraw it at any time and take him back into custody. And he's not going to have a right to go back to a district court and say, please give me habeas because the district court under, if we let this district court decision stand, as long as that administrative stay is in place, the district courts won't take jurisdiction unless this court does something to explain that Akinwole Footnote 4 doesn't imply that seeking and obtaining administrative stay removal from the Board of Immigration Appeals who issued the administrative stay doesn't frustrate removal to the point of where it gives ICE carte blanche to hold you under any terms it deems necessary or to release you under any terms it deems necessary, no matter how onerous or offensive. So I think- So it's your view that if we find the case moot and six months, eight months, a year down the road, the government were to re-detain your client, you would have forfeited your power to come into federal district court under habeas? That's what the district court ruled and that's why we took appeal, Your Honor. He found that because- that by this time stopped once we got the stay. So for years now, under that ruling, he's not had any eligibility to seek custody redetermination, not even for district court under habeas because the six months under Zedvitas aren't tolling because he has this stay. That's exactly why we're here for this court to pronounce that that's not correct. That's not the correct reading of Zedvitas. That's not the correct reading of 1231A1C. That's not the correct reading of Akinwole Footnote 4 in that seeking an administrative stay of removal from the Board of Immigration Appeals that has been subsequently granted doesn't stop the removal period so that habeas is never accomplishable. You can't ever have habeas jurisdiction under Zedvitas. Only if they reopened the case, he wouldn't be in the removal period anymore and he'd be back in removal proceedings where he'd have bond rights. If they denied the motion to reopen, the stay would go with it and the impediment to removal would go away, but they haven't done any of it. It's been over two years on a very simple motion to reopen. He has relief available to him. He has no impediments under the law to that relief other than the fact that there is no procedural form available to him until they open the case. And it's not high priority for the board, so it's not unusual for these to take two, three years on a motion to reopen. So coming to the heart of what you want, if I hear it right and tell me if I've misunderstood it, you want the government to come in here, beat their chest, say I have sinned and second, you want the court to say, if they re-detain him, you can come back into district court and perfect your habeas under the voluntary secession doctrine. That's what you want. I don't think that's exactly accurate. I think it's much more simple what I want, Your Honor. I think what we're asking for is for this court to clear the obstacles in the road to habeas for somebody that's already eligible. The court isn't doing anything extraordinary. It's just clarifying a footnote in dicta that has caused some confusion. The court knows it's caused confusion in district court, says it's remarked in fara. It's not being interpreted the way it was meant to be interpreted. And if you don't correct it, that's always going to be an obstacle. He's not going to be able to come back to this court. You won't see him again unless it would be an appeal of the dismissal because he still has the exact same issue on whether or not he has habeas because the admin removal order, the admin stay is still in place. As long as that's the case and this court hasn't ruled on it, there's nothing we can do besides keep raising that issue to a district court. And we're back here again on the same facts. The facts haven't changed that gave rise to this court's jurisdiction, that gave rise to the dispute between the parties. Those facts are the same. So there's no change that makes this court moot. Just because he's been released doesn't mean that all the legal disputes that go into the rights of the parties haven't changed. They released him because they lost bed space. If they get bed space, they'll bring him right back. The COVID restrictions ease up on ICE detention, they'll bring them back, especially if it's three or four years later. There's nothing to say they won't. And just to trust them, I don't know where their authority is that trusting them is a sufficient remedy when they've already held him for over a year with the stay in place. They've shown no willingness to just let him go because we've asked him to. They did it in their own discretion. And they'll re-detain him in their own discretion. And all of that is unreviewable. Okay, good. All right, let's hear from the governor. Ms. Wilson? Yes, good morning. Can everyone hear me? Yes. I can't see a clock, but if somebody was just let me know if I'm talking too long. I appreciate it. Yeah, so I will be because you can't see the clock. I will be lenient. Don't worry. I'll let you know when it's winding down. And Mr. Militello went over. We'll let you go over if you need to. It's fine. Thank you, Your Honor. But good morning. And may it please the court. Sarah Wilson appearing on behalf of the government in this case. We think that the court should dismiss the appeal as moot based on the petitioner's release from detention. But if, however, the court finds that there is some aspect of a petitioner's claim that has survived his release, we ask that the court affirm the district court's denial of the petition in this case. The petition in this case really raises a particular type of immigration detention challenge, one that seeks release under that framework set out by the Supreme Court in Zed Vidas. And the relief for that claim is nothing more or nothing less than a writ that orders the government to immediately release the individual from custody. And looking back to the prayer for relief that was attached to the habeas petition in that case, in this case, that's the maximum relief that was sought in this case as a remedy for the claim here. And that's exactly the relief that has been afforded. And that relief was afforded through the very same process that the government outlined presently and has for the life of this case existed as a remedy for these types of claims through the administrative process, the process that ensures that there are periodic reviews of its custody determinations over the course of the detention period to ensure that that custody remains in line. Ms. Wilson, can I ask you just, I guess, two related questions? One, is it your position, your kind of like top line position that the voluntary cessation exception doesn't apply in the habeas context or separately that it applies but fails here? I think we make both arguments. I think we're suggesting first that 2241 is a particular type of claim for a particular type of release. So you have to be in custody and you have to be challenged the lawfulness of that custody. And so here, since the claim is directed to the length of time that you remain in physical immigration custody, that claim just cannot survive outside of being in custody. So we have sort of a top line argument that this exception isn't really relevant to this type of claim. But if you look to the voluntary cessation case law in this district, we also think we prevail there. The government is, as the court has already pointed out, entitled to a presumption of regularity on this issue. And there are especially good reasons in this case to afford the government that presumption here, principally, is that we haven't changed position. The government, from the beginning of the case, has done exactly what it said it was going to do. It was going to review custody determinations based on the existing facts through the life of the detention period. So let me ask you just a quick question, because at least my understanding, both the sort of voluntary cessation doctrine more generally and our case law, is that it's true that the government gets sort of the benefit of the doubt, but that there is within that benefit of the doubt a spectrum. If the government, for instance, repeals an offending policy and enacts a new one, then we're at one end of the spectrum. Here, it's true it's the government, but at least so far as I understand this order of supervision and the way you've just described it, there's nothing really super formal about this that would prevent you from re-detaining him, right? You wouldn't have to go—tell me this. What would the process be? How many hurdles would you have to leap over to re-detain him? We could cancel the order of supervision if we determine that there's a likelihood that we could remove him in the reasonably foreseeable future. We could also re-detain based on a violation of the order of supervision. If that happens there, it's then reviewed by an immigration judge. The immigration judge can take a look and see if the order of supervision was correctly canceled. There's also habeas remedy that would allow him to come in and make the same challenges that he's making in this case, but from the circumstances where we would have the benefit of knowing the reasons for the re-detention rather than, as we're doing here, talking in the abstract. Petitioner's release in this case was handled consistent with the regulations here. The government has a regulatory obligation under 8 CFR 241-4 to do these consistent, periodic 90-day custody reviews. The custody review in this case happened just after Petitioner crossed that one-year mark, the time in which you would then have to go back in by regulation and check in and make sure that there is a continuing basis for detention. The factors that are considered at that detention check-in are consistent here. We had the benefit of new information at the one-year mark at the time that the original decision was made by the district court judge. All we had here was a motion to reopen that was pending. The basis for the motion to reopen was that there was a pending application, an I-130 petition, pending with USCIS, another government agency. It's just pending.  Then, in October of last year, one month prior to the release date, the individual's I-130 was granted, which, in the government's view, changed the position of the parties. In addition, as the background of this case shows, there was a lot of COVID-related considerations that went into whether or not to detain or release somebody at the time. All those factors were appropriately considered at the one-year mark. The government's decision here to change course isn't really a change in course. It really is just following the regulations and its obligations to continually check-in and make sure that detention remains consistent with the regulations, the statute, and the constitutional bounds of a Zot B disclaim. Well, it seems to me you've changed course in the sense that he was detained and you released him. There may be an altogether sufficient reason for why you did what you did, but I want to come back to one thing that you said in response to my colleague's question. And you said if he should be re-detained, he would be perfectly free to file a new habeas petition in district court. There would be nothing to bar him, at which point all of these issues could be taken up then. Do I have that right? That's correct. That's correct, Your Honor. And I'll add that I don't think that there's this level of confusion that Petitioner's would exist in the new petition. And that's because the very same confusion that he's alleging happened in the district court's order was very clearly addressed by this court's decision in FARA. There's not this concern that perhaps they may get it wrong again and do something wrong in a subsequent habeas case. There's just simply nothing for this court to correct because whatever they believe needs to be corrected has already been corrected in an intervening case law. But I'll also take issue with the suggestion that the district court got this wrong. A lot of the brief is focused on this idea that the district court believed that there was no jurisdiction to consider the claim or that he was in failure to comply status so that the government could hold him indefinitely. None of those holdings are present in the district court's order. The district court makes very, just says very clearly the government has not had the opportunity yet to affect this person's removal. And if you look at the facts as they existed at the time the district court made the decision, the petitioner had been subject to a final order of removal for only six months, only a few weeks beyond what the, what the, what the, what under ZVDAS we have, you know, a baseline entitlement to detain during the removal process. We had a valid travel document that expired. We had previously planned a travel path. We had a way to, to affect the removal order and we're only stopped from affecting that removal order because we had that stay come in. And again, as I explained, that stay was associated with a wait and see, a wait and see what happens with this petition for his, that his spouse filed on his behalf. So at the time we didn't have any reason and the court didn't have any reason to believe that the government would, would have difficulty removing at the time, you know, when the time came for that to happen. That was an eminently reasonable decision for the district court to make. So assigning all this additional concerns about whether they believe they had jurisdiction or whether they were improperly applying a statutory provision that isn't cited anywhere in, in the district court's order, I think misreads what the district court's decision and, and it doesn't give, you know, fair consideration of the facts as they existed at the time that the district court made that decision. Okay. So let me ask you just a quick, just sort of another voluntary cessation related question. So in answer to Judge Marcus, you said, understandably, I think if we re-detain him, he can file a new habeas petition, right? But I mean, I guess the point of the voluntary cessation doctrine, if it applies here, the point of the voluntary cessation doctrine is to prevent this cat and mouse game where, you know, you detain him, he files a habe, so you release him, you re-detain him, so he files another habe, you detain him, he files another habe, you release him again. And so he can just like never get heard. He's like stuck in this samsara where, you know, he can't escape it. And so, I mean, it seems to me if voluntary cessation applies, unless you can make some sort of representation here that, you know, give us like some sort of specific conditions under which you will not re-detain him, then I don't know if the voluntary cessation doctrine applies here, why it shouldn't apply here. If all you can really say is, well, we're continuing to review the appropriateness of detention, which is sort of what it sounds like, then I don't think he has any basis for thinking that he won't simply be re-detained and then re-released and then re-detained and then re-released. So I think that the government is entitled to presumption that it will follow the law. And so I think that because we've made the decision that release was appropriate under the circumstances that existed in the date of the release order, November 24, 2020, unless something changes, that the government's entitled to the presumption that we will continue that release order consistent with our regulations and case law and all the other restrictions we have on continued detention. So I think that's the first answer. I mean, I guess the reason that that doesn't so much move me is because that just sounds to me like, and I'm not criticizing you, that just sounds to me like in the totality of the circumstances, we'll decide on a day-to-day basis whether or not he should be detained or released. And so that, I don't know, it sounds like we are at the far, far, far, far, far other end of the spectrum from repeal of offending statute and replacement with a different statute. That's like super formal. This sounds pretty kind of gestalt-ish. And I'm just not really sure what prevents you from doing, from re-committing the alleged wrong. I think you have to look at what the alleged wrong is here. So even if he had successfully litigated his Zavidas claim, he wouldn't be entitled to some order that says you may never be re-detained in the future, right? The statute says that if you're released under 1231, 1231A3 says you will be placed on an order of supervision. And those terms of that supervision apply for the duration of that. So I think that it's a distinction between what he could be afforded had he litigated this case all the way through versus what he was afforded. And they're the same in this case. So the government's discretion isn't changed by an order by this court. To the extent he wants you to issue an order that says you may never be detained in the future, that's simply just not what the court in Zavidas was giving courts the power to do. The court was very clear that a lot of diplomatic concerns, considerations go into these decisions about whether someone's likely to be removed in the reasonably foreseeable future and that those diplomatic considerations change over time. So there's just no protection that's available for re-detention or some more permanent solution to this type of claim. So I think that has to factor into the way that the court approaches the voluntary cessation analysis. Let me ask the follow-up question. Let's suppose, hypothetically, you were to determine that he should be re-detained. You've already hit the six-month mark. How long could you hold him, in your view, without running smack into a very serious constitutional problem? There's not a time limit that's set through the Zavidas decision. There's considerations based on whether there's a likelihood of removal. So I think from the outset of a re-detention claim, we'd have to show that we expect that we would be able to remove in the reasonably foreseeable future. So I think that standard would apply regardless of how long he's in detention. Like, I don't think he would have to wait to make that claim. Maybe that's the question the court is asking. My question is, under Zavidas and the controlling laws, you understand it. How long can you hold him? You obviously decided there was something going on and you cut him loose. You decided that for a variety of reasons, you thought this was a wise exercise of your discretion. I appreciate that. I'm simply asking you, if you chose tomorrow to re-detain him, does the time run begin to run from the detention now? Or does it get added on to the original detention for purposes of due process? I mean, for purposes of due process, the court would have to take into account all facts and circumstances. And I think that would include considerations of how the government has treated him to date. So I don't think that there's some sort of clean break in terms of the due process analysis. But in terms of Zavidas' claim, I think the standard applies regardless of how long he's been in custody at this point. Because he was previously in custody, the question would be whether the government expects to be able to remove him in the reasonably foreseeable future. And here, the government has made a decision to release based on the fact that there is an administrative stay and the fact that he now has a granted I-130 petition. Those materially change the way that the government approaches whether or not to maintain custody. As far as a hard limit, Zavidas just isn't set up that way. As long as the government can show that it's likely to happen in the reasonably foreseeable future, it's the forward-looking time that matters rather than the backward-looking time. So we'd be expected to meet that standard regardless. How long do you think it'll take to resolve the underlying issues that are pending before the INS? That's tough to say. The petitioner, because he's released now, is on the non-detained docket. The non-detained docket just tends to move a lot slower than the detained docket. That's why I'm asking the question. I don't have a guess, Your Honor. I'm sorry. All right. Thank you very much. Thank you very much. Judge Lawson, any questions? Okay, very well. Mr. Militella, we'll hear from you on rebuttal. Thank you, Your Honor. Just at the outset, to be clear, the only relief we asked for at the District Court under habeas wasn't just release. It was whether we have bond rights when custody is authorized under 1231. We weren't asking for just a blanket order from this court or the District Court saying he must be released and never detained. It was so long as he remains detainable under 1231 and his administrative stay is still pending, will he have a right to have a neutral arbiter redetermine his custody at some point? Respondent's counsel just alluded during her 15 minutes that he could seek review of the order of supervision from immigration judge, and I don't know where that is possible when the order of supervision is provided when your detention is still under 1231. It's not. There's no 1226C bond rights. There's no 1226A bond rights. There's no where does the immigration judge statute put the immigration judge or the regulation judge put the immigration judge and any authority to tell ICE what they can and cannot do with the body once the removal order is administratively final. You have to go to District Court. You have to seek a habeas for both release and to have somebody review whether there should even be a bond hearing when anybody gets to review ICE's determination that it's not foreseeable in the future or that he's a flight risk or a danger. They, all the facts that were told to the court now aren't in the record because the District Court never had an opportunity to find them because he dismissed, the District Court dismissed the whole claim based on the fact that the administrative order, the administrative stay is in place. It's still in place. It's going to stay in place. And until that is gone, this court, the issues are not new. The dispute between the parties still remains. The Respondents' Council is saying that we, that it wants this court to give the benefit of the doubt to the government and just presume that they always follow the law, but they aren't admitting that they have broken the law here. They're saying everything is fine and there's nothing to see here. So what makes, I don't see what makes this court think we won't be back in the same situation asking the court to determine that Zadvydas' time actually did toll is that the time of his 1231 time is actually a lot longer than just the time before his stay. It's years and years. Without that determination, there's nothing that prevents ICE from offending his constitutional rights without having anybody to be able to review it. Also, the idea that this issue was resolved by this court's decision in FARA is incorrect as this court specifically did not address the operation of 1231A1C to that case because it found that in that case there was a judicial stay of removal, not an administrative stay of removal, and that the removal period ceased, it was, did not begin. It was reset by that judicial stay of removal by an operation of statute. That statute was 1231B, 1231A1B to Romanet. That's not the case here. As we've made clear in the briefing, the case here is did the Zadvydas' time stop under 1231A1C, the only available provision under the statute that stops removal, that stops Zadvydas' time under the law. That has to be what the court, the district court, decided when they cited to Occomelney footnote 4 as the reason why the administrative stay of removal frustrated and precluded the and the government has yet to provide any explanation as to how that is overcome on a refiling of habeas. If this court doesn't answer that question, that does an administrative, does administrative stay of removal stop Zadvydas' time, there is no guarantee that he will have any jurisdiction or have any ability to go to district court and seek review of custody determination if he is re-detained. He is re-detained, he'll be in the same situation he is right now. In fact, as a matter of law, he's still in the same situation as he was when he was sitting in BTC in detention. The physical location of his body doesn't change the legal rights that are being sought to be protected and that he's asking his court to protect. There are no questions. I'll see the remainder of my time. Okay, very well. We thank both counsel for their presentations and that case is submitted as well. We will be in recess until tomorrow morning at 9 a.m. Thank you.